UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID LEWIS GREENE,

     Plaintiff,

v.                        CASE No. 8:13-CV-1660-T-17TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

     The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, I recommend that the decision be affirmed.

I.

     The plaintiff, who was fifty-two years old at the time of the administrative hearing and who has some college education, has worked as

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

a lens polisher and a lens inspector (Tr. 49-50, 133, 177, 178). He filed a claim for Social Security disability benefits, alleging that he became disabled on January 31, 2010, due to degenerative disc disease/herniated disks/fracture, hip sprain/dislocation, bilateral hearing loss/tinnitus, arthritis, high blood pressure, asthma, and diabetes (Tr. 176). His claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of disorders of the spine, asthma, hearing loss, hypertension, history of right hip strain, history of right shoulder cuff repair, and degenerative changes of the right shoulder (Tr. 28). She concluded that, with these impairments, the plaintiff has the residual functional capacity to perform a restricted range of light work (Tr. 31). Specifically, she found (id.):

> [T]he claimant has the residual functional capacity
> to perform the full range of light work as defined in
> 20 CFR 404.1567(b), with the following additional
> limitations: the claimant may never climb ladders,
> ropes and scaffolds; may occasionally climb ramps
> and stairs, balance, stoop, kneel, crouch, and crawl;
> must avoid concentrated exposure to extreme cold
> and heat, humidity, noise, vibrations, and
> pulmonary irritants; the ability to hear is limited to
> frequently bilaterally; overhead reaching with the

> right upper extremity is limited to occasionally; the claimant must be able to alternate sitting and standing every 30 to 45 minutes for one or two minutes, while continuing to perform work; and a cane is required for ambulation only.

The law judge determined, based upon testimony from a vocational expert, that the plaintiff's residual functional capacity did not preclude the plaintiff from performing his past work as a lens inspector or lens polisher as it is generally performed (Tr. 35). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 36). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 423(d)(3).  The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff argues that the law judge's determination that he could perform his prior light work was erroneous because she failed to evaluate adequately two purported medical opinions that the plaintiff is limited to performing sedentary work (Doc. 17, pp. 2-7). Additionally, the plaintiff argues that the law judge improperly relied upon the opinion of the non-examining reviewing physician in making her decision, and did not

properly evaluate the plaintiff's symptoms and credibility (id., pp. 7-8, 8-12). None of the plaintiff's arguments is meritorious.

A.  The plaintiff contends first that the law judge "erred in not stating the weight given to the opinion of treating primary care physician, Dr. [Catherine L.] Schell"(id., p. 2).  Medical opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).

On February 22, 2010, Dr. Schell met with the plaintiff and stated in the progress notes that (Tr. 851) (emphasis in original):

> [The patient] [w]ants full stat[e]ment that he can NOT work.  Pt wants permane[n]t disability.  Pt may need functional capacity evaluation or job retraining.

Additionally, Dr. Schell stated in the "Assessment/Plan" section of the progress note that (Tr. 852): "Pt seeks permanent disabil[it]y and this may be premature[.]  SWS to discuss for job retraining ..."

The law judge referred to Dr. Schell's comments in the decision (Tr. 33).  Contrary to the plaintiff's argument, no further discussion of those comments was necessary because they do not constitute a medical opinion

that requires evaluation. Thus, a "medical opinion" is a "judgment about the nature and severity of the claimant's impairments ... [opining] what he can still do despite his impairments, [or] his physical ... restrictions." See Lawton v. Commissioner of Social Security, 431 Fed.Appx. 830, 833-34 (11th Cir. 2011) (quoting 20 C.F.R. 404.1527(a)(2)). Dr. Schell's comments, however, merely convey that she was skeptical of the plaintiff's claim of disability, and that she needed additional information to form an opinion of the plaintiff's vocational capabilities.

The plaintiff argues that Dr. Schell's comment that the plaintiff "may" need job retraining is a medical opinion that "Plaintiff was unable to perform past light duty work and ... [therefore] he needed to be retrained for sedentary work" (Doc. 17, p. 4). The plaintiff presses this interpretation because, under these circumstances (the plaintiff was 50 years old at the alleged onset of disability), a finding that he was limited to sedentary work supports a determination that he is disabled (id., pp. 3-4).

However, that is not what Dr. Schell said, nor can it be reasonably inferred from her comments (id., p. 3). Thus, the plaintiff's inference presumes that Dr. Schell was aware of the requirements of the

plaintiff's prior job, and that she had an opinion regarding the plaintiff's functional limitations. However, the plaintiff has not identified any such evidence.

To the contrary, the record reflects that Dr. Schell suggested that the plaintiff undergo a functional capacity evaluation (Tr. 851), which indicates that Dr. Schell did not know the plaintiff's functional limitations. Furthermore, there is no evidence that Dr. Schell knew that the plaintiff's prior job was categorized as light work. In fact, Dr. Schell wrote in a medical record on February 9, 2010 (less than two weeks before making the comments at issue) that "it is not clear to me what all patient does at his job" (Tr. 495). In sum, because Dr. Schell's suggestion that the plaintiff "may need functional capacity evaluation or job retraining" (Tr. 852) does not constitute a medical opinion, and it certainly is not an opinion that the plaintiff is limited to sedentary work, the law judge did not err in failing to state the weight given to this comment.[2]

---

[2]The plaintiff also contends that, "[i]f the Commissioner argues that the meaning of Dr. Schell's opinion was unclear, then any uncertainty the ALJ had as to the meaning of that opinion ... would initiate an obligation on the part of the ALJ to recontact Dr. Schell for additional explanation" (Doc. 17, p. 5). That contention is meritless, as the meaning of Dr. Schell's comment was not unclear; what was unclear to Dr. Schell was the extent of the plaintiff's vocational limitations.

Significantly, Dr. Schell was employed by the Department of Veterans Affairs ("VA"), and, under VA policy, VA doctors are not to fill out private sector disability forms, so that VA doctors are "not allowed to determine disability as quantifying [a patient's] abilities and disabilities" (Tr. 1100; see Tr. 998-99). There is no reason to think that Dr. Schell violated the VA policy. This confirms that Dr. Schell's comments did not amount to an opinion regarding whether the plaintiff was disabled.

B. The plaintiff next contends that the law judge erred in giving no weight to the opinion of James Dandrea, a physician's assistant with the VA (Doc. 17, pp. 5-7). Dandrea opined in connection with a VA's "Compensation and Pension Examination" that the plaintiff is "unable to engage in physically demanding work. He would be able to work in a sedentary job" (Tr. 1046). Dandrea's opinion of the plaintiff's occupational limitations "are per patient history" (Tr. 1038).

The law judge acknowledged Dandrea's opinion in the decision but she discounted it, explaining (Tr. 34):

> a Physician's Assistant, which is not an acceptable medical source, gave the opinion on examination. Moreover, a disability determination by another agency or private employer is not determinative of

> the issue of whether the claimant is disabled under the Act because the standards for determining disability may differ. Accordingly, the opinion is given little weight.

A physician's assistant is not an acceptable medical source and, therefore, his opinion is not entitled to any special weight or consideration. 20 C.F.R. 404.1513(a), (d)(1), 404.1527(a)(2). The plaintiff argues that the law judge cannot discount Dandrea's opinion solely because it was given by a physician's assistant (Doc. 17, p. 7). However, the law judge was entitled to discount Dandrea's assessment because he was just a physician's assistant and not a medical doctor. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004) (chiropractor).

Moreover, as quoted above, the law judge did not disregard Dandrea's opinion solely on that basis. Thus, as the law judge correctly pointed out, the standards upon which Dandrea based his opinion that the plaintiff was limited to sedentary work may differ from the Social Security Administration's definition of that term. See SSR 96-5p, 1996 WL 374183 at *5 (S.S.A.)("[a]djudicators must not assume that a medical source using terms such as "sedentary" ... is aware of our definitions of these terms).

Notably, Dandrea's opinion that the plaintiff could perform only sedentary work was preceded by the comment that the plaintiff is "unable to engage in physically demanding work" (Tr. 1046). However, an inability to engage in physically demanding work does not necessarily preclude work at the light exertional level under the Social Security Act.

Furthermore, Dandrea did not quantify the plaintiff's limitations. See 20 C.F.R. 404.1513(c)(1) (medical statements about what a claimant can still do should describe the claimant's ability to sit, stand, walk, lift, carry, and handle objects). Therefore, the medical basis for Dandrea's opinion that the plaintiff is limited to sedentary work is unclear. Significantly, Dandrea stated that the plaintiff's occupational limitations "are per patient history" (Tr. 1038), thereby suggesting Dandrea's opinion that the plaintiff was limited to sedentary work was based upon the plaintiff's subjective complaints (which the law judge did not fully credit). Consequently, even if Dandrea's opinion had been rendered by a treating physician, the law judge would have been entitled to disregard it because it was a conclusory opinion on a vocational issue reserved to the Commissioner. Johns v. Bowen, 821 F.2d 551, 555 (11th

Cir. 1987); <u>Lanier</u> v. <u>Commissioner of Social Security</u>, 252 Fed. Appx. 311, 313 (11th Cir. 2007).

The plaintiff, as indicated, does not even acknowledge the law judge's full explanation for discounting Dandrea's opinion, and he certainly has not made any argument that compels a finding that the opinion is entitled to more than little weight. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>. Therefore, the plaintiff's contention that the law judge did not adequately evaluate Dandrea's opinion is meritless.

C. Next, the plaintiff contends, in a cursory manner, that the law judge erred in relying upon the opinion of non-examining reviewing physician, Dr. Thomas Renny (Doc. 17, pp. 7-8). Dr. Renny opined that the plaintiff could perform light work requiring no more than frequent postural movements; frequent bilateral hearing; no climbing of ladders, ropes, or scaffolds; and no concentrated exposure to environmental extremes and hazards (Tr. 896-903).

Non-examining reviewing physicians are considered experts in Social Security disability programs, and the law judge must state the weight given to such opinions. 20 C.F.R. 404.1527(e)(2); SSR 96-5p, 1996 WL

374183 at *6 (S.S.A.).   The weight to be given such an opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence.    Poellnitz v. Astrue, 349 Fed. Appx. 500, 502 (11th Cir. 2009); 20 C.F.R. 404.1527(e).

The law judge gave Dr. Renny's opinion "great weight" because it was consistent with the evidence of record (Tr. 35). The law judge did not, however, accept Dr. Renny's opinion in its entirety, as her determination of the plaintiff's residual functional capacity includes additional restrictions for overhead reaching with the right upper extremity, use of a cane, and an option to alternate sitting and standing (see Tr. 31).

The plaintiff argues that the law judge erred in relying on Dr. Renny's opinion because the opinion of a non-examining reviewer is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision (Doc. 17, p. 7).  The opinion of a non-examining physician is entitled to little weight when it contradicts the credited opinion of an examining physician. Lamb v. Bowen, supra, 847 F.2d at 703. "Where, however, a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying

-13-

on the non-examining physician's report." Poellnitz v. Astrue, supra, 349

Fed. Appx. at 502; see also Jarrett v. Commissioner of Social Security, 422

Fed. Appx. 869, 873 (11th Cir. 2011).

In this case, the plaintiff has not identified a treating physician

who offered a contrary opinion. Rather, the plaintiff argues weakly that Dr.

Renny's opinion is "directly opposite of the opinion of the treating physician,

Dr. Schell," who allegedly said that the "Plaintiff needed retraining for work

easier in physical demands than light duty work" (Doc. 17, p. 7, citing Tr.

852). However, as discussed supra, pp. 6-8, Dr. Schell did not say that, nor

is that a reasonable inference from her comments. Therefore, this argument

is baseless.

The plaintiff argues further that the law judge's acceptance of

Dr. Renny's opinion on the ground that it was consistent with the medical

evidence as a whole is "too general [an explanation] to permit meaningful

judicial review" (Doc. 17, p. 7). It is permissible for a law judge to accept a

non-examining reviewer's opinion because it is consistent with the medical

evidence. See Forrester v. Commissioner of Social Security, 455 Fed. Appx.

899, 902 (11th Cir. 2012) ("The ALJ clearly articulated its reasons for giving

significant weight to the ... non-examining physicians' opinions when it stated that their opinions were more consistent with the medical evidence."). The plaintiff cites no apposite authority to the contrary.

Furthermore, the law judge's explanation for giving Dr. Renny's opinion great weight is not too general to permit meaningful judicial review because the law judge's lengthy discussion of the evidence amply explains the basis for her conclusion (see Tr. 28-34). Thus, while noting that the MRIs showed lumbar and cervical spine abnormalities (Tr. 28, 29), the law judge identified several findings on physical examination that were inconsistent with debilitating symptoms.

For example, the law judge recounted the findings of Dr. John Drygas, an orthopedic physician who evaluated the plaintiff on April 20, 2010. Dr. Drygas observed that the plaintiff's gait and station were normal; he had full range of motion in the cervical and lumbar spine; the plaintiff's reflexes and sensation were normal and symmetric in the upper and the lower left extremities except for a decrease on the right; and the plaintiff had no pain and full range of motion in the hips (Tr. 29; see Tr. 892-94). Additionally, the law judge identified findings from other physical

examinations which showed that the plaintiff had grossly good musculoskeletal range of motion and symmetry, and no synovitis, no objective evidence of pain with active motion on the right side, and no objective evidence of pain following repetitive motion (Tr. 34; see also Tr. 995-96, 1053-54 (non-focal neurological examinations)). Moreover, the law judge noted that, during occupational therapy, the plaintiff showed normal active range of the right upper extremity during spontaneous use, such as reaching for a chair or lying down on the examination table (Tr. 34).

In sum, the law judge's explanation for giving great weight to Dr. Renny's opinion was sufficient because the law judge specified record evidence that was consistent with that conclusion. Notably, the plaintiff does not identify in this argument any evidence that compels a finding of a more restrictive residual functional capacity. See Adefemi v. Ashcroft, supra, 386 F.3d 1022, 1027. Therefore, the contention that the law judge erred by giving great weight to Dr. Renny's opinion that the plaintiff had the residual functional capacity to perform light work is unpersuasive.

D. The plaintiff's final argument is that the law judge failed to evaluate properly the plaintiff's symptoms and credibility (Doc. 17, p. 8). This contention is meritless.

The plaintiff testified at the administrative hearing that he cannot work due to paralysis and nerve damage on his right side, a herniated disc in his neck, right hip sprain, and fractures in his back (Tr. 52, 53, 59, 63). Further, the plaintiff testified that, due to swelling in his back, he lies flat six hours out of an eight-hour workday for 20-25 days of each month (Tr. 63-64). The plaintiff also stated that he cannot stand or walk for more than 10 to 15 minutes, cannot lift heavy loads, and has trouble bending (Tr. 59, 60, 63). The law judge summarized the plaintiff's testimony of disabling limitations in the decision, but did not find the testimony fully credible (Tr. 32-34).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and she referred to the pertinent regulation and Social Security rulings (Tr. 31). She even cited Landry v. Heckler (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge articulated her application of the Eleventh Circuit standard as follows (Tr. 32):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

> expected to cause some of the alleged symptoms;
> however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are
> inconsistent with the above residual functional
> capacity assessment.

Notably, the law judge credited the plaintiff's allegations to a significant extent, as she found the plaintiff was substantially limited to performing a restricted range of light work, and specified that "the claimant's pain is taken into consideration in the reduction of his residual functional capacity" (Tr. 35). Thus, the law judge discounted the plaintiff's allegations only to the extent that they claimed to be completely disabling.

Furthermore, the law judge gave a lengthy and thorough explanation for rejecting the plaintiff's allegations of total disability (Tr. 32-33):

> The claimant has had neck and back impairments
> for many years and continued to work. He was, in
> fact, sent to optical technician training by the
> military so he would have a non-strenuous job with
> no lifting, bending or twisting (Exhibit 7E). The
> claimant originally worked for his most recent
> employer as a Lens Polisher, but testified that his
> employer tried to lessen his job duties and working
> hours by giving him the Lens Inspector job, but
> that he was unable to do the work. However, the

claimant held that position from January 1, 2008 through February 12, 2010, and his employer denied making any concessions to the claimant based on age or disability (Exhibits 4E, 5E, and 10E).

Although the plaintiff testified that his job as a Lens Inspector involved lifting 30 to 40 pounds and a lot of standing, his testimony is inconsistent with his original description of his job. On February 11, 2010, the claimant reported that his job was sedentary, did not require any lifting or carrying, and involved sitting at a counter all day looking at lenses and identifying rejects (Exhibit 7E). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

The law judge continued (id.):

The claimant appeared to be less than forthright about his symptoms at the hearing. The claimant testified that he has paralysis on his right side, and that he has fractured L4 and L5 vertebrae. However, other than insisting that his doctor and the military told him that, he was unable to provide any specifics, and there is nothing in the record to indicate that the claimant had a diagnosis of either paralysis or fractured vertebrae. The claimant testified that he uses a TENS unit and some other unspecified unit that straps on his back and that it helps, but does not relieve the pain. He also

testified that the pain medications he takes help relieve some pain. However, despite his testimony that the TENS unit and the medications both help to relive his pain somewhat, he also testified that his pain is a level 10 "unbearable" pain, and he has to lie flat on his back six out of eight hours per day and 20 to 25 days out of the month.

....

On February 22, 2010, the claimant reportedly was upset that he had not been seen by neurosurgery. It was noted the claimant wanted permanent disability and wanted a statement that he could not work (Exhibit 4F, page 12). ... Occupational therapy notes from May 2011 show that the claimant stated no goals for therapy related to his shoulder, but "only stated that he just wants to get his disability" (Exhibit 12F, page 25).

The claimant's report of pain is not fully credited since he did not fully cooperate with treatment to alleviate or lessen his symptoms. The claimant was in the Care Coordination Home Telehealth program for monitoring of his diabetes and hypertension, but was discharged due to non-adherence to goals and plan (Exhibit 1F, pages 116-117). The claimant had a neurosurgery recommendation and approval for a C3-4 anterior cervical diskectomy and fusion, but the claimant refused surgery (Exhibit 12F, page 16). There is no reason indicated for the refusal, but the claimant reported he had no surgery scheduled or planned (Exhibit 7E).

Recent occupational therapy notes relating to his shoulder injury and surgery indicate the claimant lacks follow through on his home exercise program and that his rehabilitation potential is very poor due to multiple co-morbidities and lack of full effort (Exhibit 12F, page 28). The claimant complained of pain with any movement, active or passive (Exhibit 12F, page 53). The claimant was noted to be extremely resistant to any handling or range of motion movements (Exhibit 12F, page 52). He aggressively and strenuously co-contracted all right upper extremity musculature to avoid movement, limiting therapy significantly (Exhibit 12F, page 53).

However, increased normal, active range of motion of the right upper extremity was observed during spontaneous use, such as reaching for a chair or lying down on the exam table (id.). The claimant was also noted to volitionally shake his right hand during some specific active range of motion activities and, when questioned, stated he had nerve damage (Exhibit 10F, page 16). His rehabilitation potential was rated as poor due to self-limiting behaviors (Exhibit 10F, page 15). The claimant's grip strength was 25 pounds with his right hand and 100 pounds with his left (Exhibit 10F, page 17). The examiner noted that higher grip strength would be expected based on the claimant's muscular activity during his co-contraction during passive range of motion testing (id.).

The law judge then discussed objective clinical findings inconsistent with the plaintiff's allegations of disabling impairments, and noted further (Tr. 34):

> [The plaintiff] reported 50 to 75 percent pain relief after an epidural steroid injection on March 11, 2011, and that he had decreased his medications as a result (Exhibit 12F, page 44). He reported improved mobility, his walking had improved, and he was smiling more (Exhibit 12F, page 44). He was noted to be alert, oriented, and in no apparent distress (Exhibit 12F, page 45).
>
> Despite his allegations of severe pain and limitations, the claimant is not tak[ing] any narcotic based relieving medications. Although he is limited due to allergies to several narcotic pain medications, it does not appear that he has sought a change in medication.

The plaintiff quibbles with the law judge's consideration of some of these factors in discounting his credibility (Doc. 17, pp. 9-12). First, the plaintiff argues that the law judge should not have considered the plaintiff's unexplained refusal of back surgery in determining the credibility of the plaintiff's allegations of disabling pain (id., p. 9). Dr. Drygas opined in April 2010 that the plaintiff needed surgery on his cervical spine (see Tr. 663). The plaintiff was approved for a cervical diskectomy and fusion with zero profile device, but the plaintiff declined the surgery (see id.).

The law judge may consider the plaintiff's refusal to have recommended surgery, and the plaintiff's failure to follow any other

recommended treatment by his medical providers, in determining the credibility of his allegations of debilitating pain. 20 C.F.R. 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 at *7 (S.S.A.) ("an individual's attempts to follow ... treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain ... for the purposes of judging the credibility of the individual's statements....[T]he individual's statements may be less credible ... if the medical reports ... show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

As the Commissioner points out (Doc. 20, p. 10), it is reasonable to assume that, if an individual experiences significant problems due to a condition, he would attempt to alleviate those symptoms by following the recommendations of his medical sources. Accordingly, the law judge may infer that the plaintiff's failure to follow the recommendations of his medical sources indicates that his condition was not as limiting as he claimed. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (the law judge may consider noncompliance with prescribed treatment as a factor in discounting the severity of an impairment).

The plaintiff argues that the law judge should not have considered his refusal to have surgery in discounting his credibility because the surgery was dangerous, and "[t]here is a serious question raised by the record as to whether surgery would provide any benefits for the cervical disc condition suffered by Plaintiff" (Doc. 17, p. 9). The plaintiff does not identify any record citation in support of this contention (see id.). Rather, the law judge correctly stated that the record contains no explanation from the plaintiff why he declined the back surgery (Tr. 33). Plaintiff's counsel's *post hoc* reasons for the plaintiff declining the surgery are irrelevant to whether the law judge's determination is supported by substantial evidence in the record.

The plaintiff, citing to Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990), argues further that it was improper for the law judge to consider his refusal to undergo surgery because the Commissioner has not demonstrated that the surgery would allow the plaintiff to return to his former job (Doc. 17, p. 9). This contention is frivolous because Lucas is inapposite to this case.

In Lucas, the law judge found the plaintiff was disabled, but denied her benefits because she failed to follow recommended treatment. The

Eleventh Circuit held that, prior to denying a disabled claimant benefits on that ground, the law judge must determine that her ability to work would have been restored if she had followed the course of treatment. In this case, the law judge did not find that the plaintiff was disabled, and she considered the plaintiff's refusal only as a factor in weighing the credibility of his testimony, which, as discussed above, is permissible.

The plaintiff argues next that the law judge should not have considered the plaintiff's discharge from the Care Coordination Home Telehealth program ("program") (id., p. 10). The purpose of this program was to monitor the plaintiff's diabetes and hypertension, and the plaintiff was removed from this program in 2008 for non-compliance with the plan and its goals (Tr. 390-91, 394). The law judge cited this, along with other instances of the plaintiff's failure to follow the recommendations of his medical sources, as evidence that the plaintiff's condition was not as limiting as he claimed (see Tr. 33-34).

The plaintiff argues that the law judge should not have considered his failure to comply with this program because that occurred prior to the alleged disability period (Doc. 17, pp. 10-11). However, the

plaintiff's non-compliance with that program is relevant because the plaintiff alleges that hypertension contributes to his disability (see Tr. 30).

Furthermore, this was just one of several examples of the plaintiff's non-compliance with treatment. Thus, the law judge also noted the plaintiff's poor effort and self-limiting behaviors in occupational therapy, his unexplained refusal of cervical spine surgery, and the plaintiff's insistence that his medical sources certify that he is unable to work rather than setting therapeutic goals (Tr. 33-34). Therefore, even excluding the circumstance of discharge from the home program, the law judge's point that the plaintiff's lack of compliance and effort with recommended treatments undermines his allegations of disabling symptoms remains supported by substantial evidence. Moreover, the lack of compliance and effort with recommended treatments was just one of a number of reasons the law judge gave for discounting the plaintiff's credibility.

Next, the plaintiff argues that the law judge erroneously found that "the Plaintiff last worked as a Lens Polisher" and that "the employer denied making concessions in employment as claimed by Plaintiff" (Doc. 17, p. 11). This argument is meritless.

First, the law judge did not state the plaintiff's last job was lens polisher. The law judge said that the plaintiff "originally worked for his most recent employer as a Lens Polisher, but testified that his employer tried to lessen his job duties ... by giving him the Lens Inspector job" (Tr. 32). Thus, the law judge said the plaintiff first worked as a lens polisher, and subsequently became a lens inspector (id.). This finding is consistent with the plaintiff's hearing testimony (Tr. 73). Accordingly, this contention is baseless.

The plaintiff also argues that the law judge misconstrued his former employer's statement that it had not provided any concessions to the plaintiff due to his alleged disability (Tr. 205). The law judge noted in the decision an inconsistency between the plaintiff's testimony that his former employer had given him concessions due to his health problems, and the employer's denial of any such concessions. Thus, in a "Request for Employment Information in Connection with Claim for Disability Benefits" ("the form"), the plaintiff's former employer stated that the plaintiff was employed from November 20, 1995, until February 12, 2010, and that he performed eyeglass manufacturing inspection (Tr. 205). In response to the

query whether "Concessions (if any) [were] made to employee by reason of age or disability," the employer put "N/A [not applicable]" (id.). The law judge indicated (Tr. 32) that the former employer's statement that it did not make any concessions to the plaintiff was inconsistent with the plaintiff's hearing testimony that his employer "tr[ied] to lighten up some of the duties for [him] as it became more difficult to do the lens polishing job" and let him do a lot of inspecting (Tr. 73).

The plaintiff argues that the employer did not refute the plaintiff's testimony because the plaintiff testified that his job change from lens polisher to lens inspector was the concession, and the form indicates that the plaintiff did not receive any concessions in his job as a lens inspector (Doc. 17, p. 11). This contention is unpersuasive because the law judge reasonably construed this form as stating that the former employer had not made concessions for the plaintiff based on disability during his employment, which the former employer listed as "11-20-1995" to "4-12-10" (Tr. 205). Since the law judge's interpretation is clearly reasonable, the court is not authorized to change it. See Phillips v. Barnhart, supra, 357 F.3d at 1240 n.8 ("We may not decide the facts anew, reweigh the evidence, or substitute our

judgment for that of the [Commissioner].”); <u>Moore</u> v. <u>Barnhart</u>, 405 F.3d 1208, 1213 (11th Cir. 2005) (the court is not authorized to “re-weigh the evidence or substitute our judgment” for that of the Commissioner). Consequently, based on the law judge’s reasonable interpretation of the evidence, there is substantial evidence supporting the law judge’s finding of an inconsistency.

Moreover, evidence in the record provides additional support for the conclusion that the transfer to the job of final lens inspector was not an accommodation for a physical impairment. Thus, the plaintiff reported that his pay as a lens polisher was $7.00 per hour, while his pay as a final lens inspector was $13.00 per hour (Tr. 178). Accordingly, the change in jobs appears to be a promotion rather than an accommodation.

In a related finding, the law judge pointed out that the plaintiff testified his job as lens inspector involved lifting 30 to 40 pounds and a lot of standing, which is inconsistent with the plaintiff’s original report that the job did not require any lifting or carrying and involved sitting at a counter all day looking at lenses (Tr. 33). In his challenge to the law judge’s credibility

determination, the plaintiff ignores this finding, as he did with a number of others.

Finally, the plaintiff argues that the law judge erred in considering the plaintiff's failure to request a medication change to provide greater relief for his pain (Doc. 17, p. 12). The law judge noted in the decision that, "[d]espite his allegations of severe pain and limitations, the claimant is not tak[ing] any narcotic based pain relieving medications. Although he is limited due to allergies to several narcotic pain medications, it does not appear that he has sought a change in medication" (Tr. 34).

The plaintiff does not dispute the accuracy of that statement, but argues that the law judge "is punishing Plaintiff for not demanding a class of medication to which he is generally allergic" (Doc. 17, p. 12). This contention is baseless, as the law judge acknowledged that the plaintiff is allergic to narcotics, but was making the point that the plaintiff could have inquired about more powerful non-narcotic pain medication if the plaintiff's pain was as debilitating as he claims. Notably, the plaintiff has not previously shied away from requesting his medical providers to change his medicine (see, e.g., Tr. 297).

In sum, the law judge has provided a thorough explanation for her credibility determination, which is supported by substantial evidence. None of the plaintiff's attempts to undermine the law judge's credibility determination has merit. Moreover, as indicated, the plaintiff leaves unchallenged a number of reasons articulated by the law judge for finding that the plaintiff was not fully credible.

## IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 5, 2014

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).